Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Zack Broslavsky (State Bar No. 241736)
zbroslavsky@bwcounsel.com
BROSLAVSKY & WEINMAN, LLP
1500 Rosecrans. Ave, Suite 500
Manhattan Beach, CA 90266
Telephone: (310) 575-2550
Facsimile: (310) 464-3550

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Libby Gatling-Lee and Elena Nacarino, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>Del Monte Foods, Inc.,<br><br>*Defendant.* | Case No. 4:22-cv-00892-JST<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>Table of Contents</u>

I.      Introduction. .......................................................................................................... 1

II.     Parties. ................................................................................................................... 1

III.    Jurisdiction and Venue. ......................................................................................... 1

IV.     Facts. ..................................................................................................................... 2

        A.      Free glutamates. ......................................................................................... 2

        B.      MSG. ........................................................................................................... 3

        C.      Labeling a food that contains free glutamates "No MSG" is false and
                misleading. .................................................................................................. 4

        D.      Defendant makes, markets, and sells products that are labeled "No MSG" ........... 6

        E.      Defendant's claims and labels are false and misleading because in truth,
                ingredients containing MSG are added to Defendant's products. ...................... 10

        F.      Defendant's "NO MSG" representations are misleading to reasonable
                consumers. ................................................................................................ 12

        G.      Plaintiffs were misled by Defendant's misrepresentations. ................................ 15

V.      Class Action Allegations ...................................................................................... 17

VI.     Claims. ................................................................................................................. 20

VII.    Jury Demand. ....................................................................................................... 30

VIII.   Prayer for Relief. .................................................................................................. 30

First Amended Complaint                                    Case No. 4:22-cv-00892-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    *An example product sold by Defendant.  The product includes added MSG.*
19
20
21
22
23
24

First Amended Complaint                                      Case No. 4:22-cv-00892-JST

**I.      Introduction.**

1.      Defendant makes, labels, markets, distributes, and sells popular brands of prepared foods, including College Inn cooking broths and stocks.  The products prominently state: "NO MSG".

2.      By prominently labeling the products "NO MSG," Defendant led Plaintiffs and other reasonable consumers to believe that their products do not contain any MSG.  But the truth is that the products contain ingredients such as yeast extract that actually do contain MSG.  Accordingly, the products that Defendant prominently labels "NO MSG" actually have added MSG.   In this way, Defendant misled consumers and overcharged consumers for products that are not what they claim to be.

**II.     Parties.**

3.      Plaintiff Libby Gatling-Lee is a citizen of New York, domiciled in Bronx County.  Ms. Gatling-Lee purchased "No MSG" College Inn Chicken Broth.

4.      Plaintiff Elena Nacarino is a citizen of California, domiciled in San Francisco County.  Ms. Nacarino purchased the following "No MSG" College Inn products: Organic Chicken Broth, Chicken Bone Broth, Chicken Stock, Turkey Broth, Mushroom Stock, and Garden Vegetable Broth.

5.      The proposed class (identified below) includes citizens of every state.

6.      Defendant Del Monte Foods, Inc is a California Corporation with principal place of business at 205 N. Wiget Lane, Walnut Creek, California 94598.

**III.    Jurisdiction and Venue.**

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,

First Amended Complaint                                              Case No. 4:22-cv-00892-JST

and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

8.     The Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

9.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District (at its headquarters).

## IV.    Facts.

### A.    Free glutamates.

10.     Glutamic acid and its salts are known as "free glutamates."  Free glutamates provide an "umami" or savory taste to food.  Umami taste induces salivary secretion, meaning that it makes your mouth water.  This can improve the taste of food.

11.     Free glutamates—and ingredients containing free glutamates—are frequently added to food to improve flavor.  Though widespread, this use of free glutamates and ingredients containing them as flavor enhancers is controversial.  Many consumers and researchers believe that consumption of free glutamates can lead to adverse health effect such as headaches, increased blood pressure, obesity, and psychiatric illness.  [1, 2, 3]

12.     In addition, many consumers report sensitivity and allergies to foods containing free glutamates.  These consumers report negative reactions from eating foods that contain free glutamates including breathing difficulties, chest pain, facial flushing, headaches, numbness or burning pain in the mouth, increased heart rates, sweating, and swelling of the face.[4, 5]

---

[1] https://www.webmd.com/diet/high-glutamate-foods#1
[2] https://www.medicalnewstoday.com/articles/322303
[3] FDA and Monosodium Glutamate (MSG), FDA Backgrounder, pp. 3-4 (August 31, 1995).
[4] https://www.medicalnewstoday.com/articles/322303
[5] https://www.healthline.com/health/allergies/MSG

2

13.     For all these reasons, many consumers—including Plaintiffs—seek to avoid foods that contain free glutamates.

**B.     MSG.**

14.     The term "MSG" is, technically, an abbreviation of "Monosodium Glutamate." Monosodium Glutamate is the sodium salt form of glutamate, which is the most popular form of free glutamate added to prepared foods.

15.     As the FDA has repeatedly recognized, "while technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate."[6]

16.     In addition, the free glutamate in MSG is chemically indistinguishable from "free standing" free glutamate or free glutamate contained in other glutamic acid salts.  People ultimately metabolize these sources of free glutamate in the same way. [7]

17.     Accordingly, to consumers, the term MSG means any free glutamate.  And the only reason a consumer might want to avoid consuming foods that contain MSG is if they want to avoid consuming free glutamates.

18.     The FDA adopted findings by the Federation of American Societies for Experimental Biology ("FASEB"), which was retained by the FDA to perform this study, that naturally occurring free glutamates cause adverse effects just like manufactured free glutamates:

> "Free glutamate can exist in two possible stereoisomeric forms: Dglutamate and L-glutamate. L-glutamate is the predominant natural form and the only form with flavor-enhancing activity. FASEB concluded that MSG symptom complex reactions are related to L-glutamate exposure and that the chemical nature of L-glutamate is the same

[6] FDA and Monosodium Glutamate (MSG), FDA Backgrounder, pp. 3-4 (August 31, 1995); Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996) (noting that consumers "use the term 'MSG' to mean all forms of free glutamate that are added to food"—not just the sodium salt form).

[7] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG

regardless of the source, i.e., whether manufactured or naturally occurring in the food. Thus, FASEB found no evidence to support the contention that adverse reactions occur with manufactured but not naturally occurring glutamate." [8]

19.     Because many consumers wish to avoid foods that contain free glutamates, many prepared foods—including the foods sold by Defendant—are prominently labeled "No MSG".

**C.     Labeling a food that contains free glutamates "No MSG" is false and misleading.**

20.     Because consumers use the term "MSG" to refer to free glutamates generally (as opposed to the sodium salt form of free glutamate specifically) a reasonable consumer would understand a claim of "No MSG" to mean that a food product labeled or described in this manner does not contain free glutamates—in sodium salt form or otherwise.

21.     And indeed, as explained above, the glutamate in MSG is chemically indistinguishable from "free standing" free glutamate or free glutamate contained in other glutamic acid salts. [9]

22.     In addition, a reasonable consumer would understand the statement "No MSG" to mean that the product 1) does not contain any "standalone" free glutamates and also 2) does not contain any ingredients that themselves contain free glutamates.  This is because if an ingredient of a product contains free glutamates, then the product itself contains free glutamates.  As a result, it is false and misleading to describe a product that either 1) contains free glutamates or 2) contains ingredients that contain free glutamates as having "No MSG" or "No MSG added."

23.     The FDA has repeatedly recognized this common-sense proposition.

24.     For example, an FDA Backgrounder on MSG noted:

---

[8] Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996)
[9] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG

4

While technically MSG is only one of several forms of free glutamate used in foods, consumers frequently use the term MSG to mean all free glutamate. For this reason, FDA considers foods whose labels say "No MSG" or "No Added MSG" to be misleading if the food contains ingredients that are sources of free glutamates, such as hydrolyzed protein.

25.     Likewise, in a notice of proposed rulemaking published in the Federal Register,

the FDA explained:

"FDA tentatively finds that consumers are likely to perceive a 'No MSG' or 'No added MSG' claim on a label as indicating the absence of all forms of free glutamate in the food.  Such claims encourage consumers wishing to avoid free glutamate to purchase a food by representing the food as free of MSG.  … [W]hile technically such foods bearing a claim about the absence of MSG do not contain the ingredient monosodium glutamate, they frequently contain levels of free glutamate that cause claims like 'No MSG' and 'No added MSG' to be misleading." [10]

"A related problem is the use of claims such as 'No MSG' and 'No added MSG' on foods that contain substantial amounts of naturally occurring free glutamate, such as tomato paste and certain cheeses.  Although such foods do not contain MSG itself, they contain ingredients with concentrations of free glutamate that function as flavor enhancers like MSG.  Because of their free glutamate content, these foods are as likely to cause or contribute to an MSG symptom complex reaction as a food that contains a comparable amount of MSG.  A claim such as 'No MSG' is misleading because it implies that the food may be consumed by glutamate-intolerant consumers without risk of a reaction." [11]

26.     The FDA concluded:

"A food that bears a false or misleading claim about the absence of MSG is misbranded under section 403(a) of the act.  FDA has repeatedly advised consumers and industry that it considers such claims as 'No MSG' and 'No added MSG' to be misleading when they are used on the labels of foods made with ingredients that contain substantial levels of free glutamate." [12]

27.     Moreover, on November 19, 2012, the FDA expressly clarified that, under section

403(a) of the Food, Drug, and Cosmetic Act, foods containing any form of free glutamate—and

---

[10] Food Labeling; Declaration of Free Glutamate in Food, 61 Fed. Reg. 48102, 48108 (Sept. 12, 1996).
[11] *Id*.
[12] *Id*.

5

not just monosodium glutamate specifically—"cannot claim 'No MSG' or 'No added MSG' on their packaging" because such a label would be misleading to reasonable consumers [13, 14].

> **How can I know if there is MSG in my food?**
>
> FDA requires that foods containing added MSG list it in the ingredient panel on the packaging as monosodium glutamate. However, MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. However, foods with any ingredient that naturally contains MSG cannot claim "No MSG" or "No added MSG" on their packaging. MSG also cannot be listed as "spices and flavoring."

**D.      Defendant makes, markets, and sells products that are labeled "No MSG"**

28.      Many prepared foods that do not contain any free glutamates are labeled "No MSG" and "No MSG added."  The reason many prepared foods are labeled this way is because, as explained above, whether or not a product contains MSG matters to consumers.  Accordingly, many consumers seek out—and are willing to pay more for—products that carry the "NO MSG" or "No MSG Added" label.

29.      Defendant prominently labels many of its products, including stock, soup, and broth products, as "NO MSG."

30.      This complaint refers to each of Defendant's products labeled or advertised as having "NO MSG" as the "No MSG Products."

31.      Illustrative examples of the No MSG Products are shown below:

---

[13] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG

[14] The FDA's interpretation of its regulations—even an informal interpretation in a Q&A on the FDA's website—is binding.  *Campen v. Frito-Lay N. Am., Inc., No.* 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *28 (N.D. Cal. Apr. 1, 2013).

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24





7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24







8

1

2

3

4

5

6

7

8

9

10

11

12



13    32.    Each of the No MSG Products is prominently labeled "NO MSG."  The NO

14  MSG label is placed on the front and center of the product for emphasis, in bold, large font and

15  within a gold circle for emphasis. The placement and styling of the label is designed to, and

16  actually does, call attention to the "NO MSG" label.

17    33.    Based on these representations, a reasonable consumer would understand that

18  Defendant's No MSG Products do not contain any MSG.  A reasonable consumer would also

19  understand that Defendant's No MSG Products do not contain any ingredients that themselves

20  contain MSG.

21    34.    Defendant labeled its products "NO MSG" because it intends for people to rely on

22  the labels and to believe that the No MSG Products do not contain MSG nor do they contain

23  ingredients that themselves contain MSG.

24

First Amended Complaint                                    Case No. 4:22-cv-00892-JST

35.     The No MSG Products also include—in small lettering on the side of the product (not the front)—the statement "a small amount of glutamate occurs naturally in yeast extract." This is shown in the magnified depiction below:



36.     As explained below, a reasonable consumer would not notice this qualifying language.  Moreover, even as qualified, in context Defendant's representations are still misleading.

**E.      Defendant's claims and labels are false and misleading because in truth, ingredients containing MSG are added to Defendant's products.**

37.     The truth, however, is that the No MSG Products do contain ingredients that contain MSG.  Defendant adds these ingredients to the No MSG Products specifically for the purpose of giving the products an "umami" taste.  As a result, Defendant's "No MSG" labels and representations are false and misleading.

10

First Amended Complaint                                          Case No. 4:22-cv-00892-JST

38.     The FDA has specifically recognized that it is misleading to label a product "NO MSG" or "NO MSG ADDED" when it has the particular, free-glutamate-containing ingredients that are in Defendant's products.

39.     For example, here is a listing of the ingredients in Defendant's College Inn Chicken Broth (pictured above with a prominent "NO MSG" label):

Chicken Broth, Contains Less Than 2% of the Following: Salt, Natural Flavors, Yeast Extract, Vegetable Stock (Concentrates of Onion, Celery Root and Carrot).

40.     One of the listed ingredients, "yeast extract" is a substantial source of MSG.  As consumer nutrition articles explain:

> "Food that lists the ingredient yeast extract always contains MSG. Although MSG may also be labeled autolyzed yeast, yeast food or yeast nutrient, the common name including the word yeast currently used in processed foods to avoid listing the ingredient as monosodium glutamate is yeast extract. Avoid foods with yeast extract if you have adverse reactions to MSG, even though you find the enhanced flavor highly appealing."[15]

> "Another possible concern about consuming autolyzed yeast extract is that it naturally contains monosodium glutamate." [16]

41.     Yeast extract, found in Defendant's No MSG Products, is an example that the FDA provides on its website of added ingredients that make a "No MSG" claim misleading. [17]

42.     Moreover, these ingredients are not ingredients that happen to be, or are necessarily a part of, the No MSG Products (such as chicken bone broth, which is a basic, and necessary, ingredient in chicken broth).  Rather, Defendant adds these ingredients to its products for taste, specifically because these ingredients include a substantial amount of free glutamates.

---

[15] https://www.livestrong.com/article/377482-other-names-for-msg-or-monosodium-glutamate
[16] https://www.livestrong.com/article/71755-autolyzed-yeast-extract/
[17] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG ("MSG occurs naturally in ingredients such as … yeast extract … foods with any ingredient that naturally contains MSG cannot claim 'No MSG' or 'No added MSG' on their packaging.").

11

43.     Thus, labeling the No MSG Products "NO MSG" is misleading and false, because those products actually do contain MSG.

**F.     Defendant's "NO MSG" representations are misleading to reasonable consumers.**

44.     As the FDA has expressly stated, it is misleading to label a product "NO MSG" if that product contains MSG, or if that product contains ingredients that contain MSG (like yeast).[18]

45.     Based on the fact that Defendant labeled the No MSG Products "NO MSG" a reasonable consumer would expect that those products do not contain MSG.  A reasonable consumer would also expect that those products do not contain any ingredients that themselves contain MSG.

46.     Defendant's products state—in a very small font on the side of the product— "a small amount of glutamate occurs naturally in yeast extract."  This qualifying statement does not make Defendant's "NO MSG" claims truthful or not misleading.

47.     Even as qualified, the "NO MSG" label is false and misleading, for two separate reasons.

48.     First, a reasonable consumer would not notice the statement that a "small amount of glutamate occurs naturally in yeast extract."  In fact, Defendant designed the statement specifically not to be noticed by reasonable consumers.  The qualifying statements are on the

_____

[18] https://www.fda.gov/food/food-additives-petitions/questions-and-answers-monosodium-glutamate-MSG; *see Campen v. Frito-Lay N. Am., Inc*., No. 12-1586 SC, 2013 U.S. Dist. LEXIS 47126, at *25-29 (N.D. Cal. Apr. 1, 2013) ("The FDA made clear that even though MSG and ingredients that are sources of MSG must be labeled by their proper names, a manufacturer cannot say that a product containing an ingredient that is a source of MSG, like torula yeast, therefore contains 'No MSG.'").

side of the package and in a much smaller font than the NO MSG label.  As a result, a reasonable

consumer would focus on the "NO MSG" on the front label, and not notice the qualifying

statements on the side of the packaging.  And this is exactly what happened to Plaintiffs, who

saw and relied on the large "NO MSG" label but did not even notice, much less read, the

qualifying statements.

49.     Second, if a consumer did happen to notice the "a small amount of glutamate

occurs naturally in yeast extract" statement, that would not render the product packaging as a

whole true or not misleading.

50.     Reasonable consumers expect qualifying language on the side of product

packaging to be consistent with, and not directly contrary to, the prominent statement on the

front of the packaging that the qualifying statement qualifies.  If a consumer reads a

contradictory, qualifying statement, it is confusing (not clarifying).  Thus, such a contradictory

statement does not make the labeling truthful overall.

51.     To try to make sense of a contradictory qualifier, a reasonable consumer would

interpret qualifying language in a manner consistent with the language it qualifies.  When

coupled with the prominent statement "NO MSG," a reasonable consumer would interpret this

statement to convey that the naturally occurring glutamates are not "MSG," i.e., the very free

glutamates that concern consumers and the FDA, but rather are a different kind of glutamate that

does not have the same wellness concerns. [19]   This interpretation makes the qualifier consistent

with, rather than directly contradictory to, the prominent NO MSG statement.  But this

interpretation, although reasonable, would be wrong—the added free glutamates are exactly the

---

[19] For example, bound glutamates (another kind of glutamate that is different from MSG
and which does not have the same reported health effects as free glutamates and MSG).

First Amended Complaint                                    Case No. 4:22-cv-00892-JST

kind that consumers are worried about.  And so even if a consumer read the qualifying statement, they would be misled.

52.     Moreover, a reasonable consumer would interpret this qualifying statement to mean that the added glutamates are necessary to make the basic product (such as chicken bone broth) as opposed to an optional ingredient added specifically for taste (such as yeast extract). But in fact, Defendant adds ingredients containing MSG specifically for taste.

53.     Whether a product contains MSG is material to a reasonable consumer.  As explained above, many consumers and researchers believe that consumption of free glutamates can lead to adverse health effects.  In addition, many consumers report sensitivity and allergies to foods containing free glutamates.  Accordingly, many consumers—including Plaintiffs—seek to avoid foods that contain any form of MSG

54.     Defendant's false statements increased the demand for the No MSG Products.  As a result, Defendant was able to charge more for its No MSG Products than it would have been able to had the packaging and ads been truthful.  Said another way, as a result of the "No MSG" claims, consumers were willing to pay, and did pay, a higher price for the Products than they would have for identical products that were not deceptively labelled, i.e., for those same products in the absence of the "No MSG" claim.  Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for its No MSG Products.  As purchasers of the No MSG Products, Plaintiffs and each member of the proposed class paid this price premium and, as a result, sustained an economic injury as a result of Defendant's false statements.

55.     For example, "No MSG" College Inn Chicken Broth is currently priced at $2.08 on the Walmart website.  This price is artificially inflated by the misleading "No MSG" claim.  If

1  this misleading claim were removed, demand would drop, which in turn would reduce the market

2  price.  This price premium can be quantified (i.e., a dollar figure measured) using expert

3  economic analysis of data that includes, among other things, sales and pricing information

4  uniquely within the possession of Defendant.

5         **G.      Plaintiffs were misled by Defendant's misrepresentations.**

6        56.    In winter 2021, Libby Gatling-Lee purchased College Inn Chicken Broth at a

7  CTown market in the Bronx.  The package said "NO MSG" prominently on the label, and she

8  read and relied on this statement when purchasing the product.  She would not have purchased

9  the product at the price she paid if she had known that the products actually do contain free

10 glutamates.  A picture of the chicken broth purchased by Plaintiff Gatling-Lee is shown below:



11

12

13

14

15

16

17

18

19

20

21

22

23

24

57.     In winter 2022, Elena Nacarino purchased College Inn Organic Chicken Broth at a Walmart store in San Leandro, California.  In addition, within the past 2 years, Ms. Nacarino purchased the following College Inn "No MSG" products: Chicken Bone Broth, Chicken Stock, Turkey Broth, Mushroom Stock, and Garden Vegetable Broth. The packages said "NO MSG" prominently on the labels, and she read and relied on this statement when purchasing the products.  She would not have purchased the products at the price she paid if she had known that the products actually do contain free glutamates.  A picture of the chicken broth purchased by Plaintiff Nacarino is shown below:

First Amended Complaint                                                Case No. 4:22-cv-00892-JST

58.    Plaintiffs did not notice the qualifying language on the side of the package ("a small amount of glutamate occurs naturally in yeast extract") when they purchased the product.

59.    Plaintiffs try to avoid eating foods that include MSG.  Plaintiffs would not have purchased the product at the price they paid if they had known that the products actually do contain MSG (free glutamates).

60.    Plaintiffs would purchase the products again if they actually did not contain any MSG (i.e., if the products were sold truthfully and as advertised).  Plaintiffs, however, face an imminent threat of harm because they will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

**V.     Class Action Allegations.**

61.    Plaintiffs bring certain claims on behalf of the proposed class of: all persons who purchased a No MSG Product in the United States during the applicable statute of limitations (the "Nationwide Class").  Excluded from the class definition are the minority of No MSG Products with labels subject to USDA regulation and expressly approved by the USDA (including certain beef products).

62.    For other claims, Plaintiffs bring those claims on behalf of a subclass of consumers who live in the identified states (the "Consumer Protection Subclass").

63.    For certain claims, Plaintiff Gatling-Lee also brings those claims on behalf of a subclass of consumers who, like Plaintiff Gatling-Lee, purchased No MSG Products in New York (the "New York Subclass").

64.    For certain claims, Plaintiff Nacarino also brings those claims on behalf of a subclass of consumers who, like Plaintiff Nacarino, purchased No MSG Products in California (the "California Subclass").

65.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any such excluded persons.

*Numerosity*

66.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical. Based on the pervasive distribution of No MSG Products, there are hundreds of thousands or millions of proposed class members.

*Commonality*

67.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:


-   whether the No MSG Products contain MSG

-   whether Defendant's labeling of the No MSG Products as "NO MSG" is misleading to a reasonable consumer

-   whether Defendant violated state consumer protection laws

-   whether Defendant committed a breach of express warranty

-   damages needed to reasonably compensate Plaintiffs and the proposed class.

18

*Typicality*

68.     Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased No MSG Products.

***Predominance and Superiority***

69.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that breach of the same express warranty is found for some proposed class members, but not others.

70.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant's "No MSG" labeling is false and misleading.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of hundreds of thousands or millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

First Amended Complaint                                         Case No. 4:22-cv-00892-JST

**VI.**    **Claims.**

**Count I: Violations of State Consumer Protection Acts**
**(on behalf of Plaintiffs and the Consumer Protection Subclass)**

72.    Plaintiffs incorporate each and every factual allegation set forth above.

73.    As alleged below, Plaintiffs bring individual and subclass claims based, respectively, on New York and California consumer protection laws.  For the Consumer Protection Subclass, Plaintiffs bring this count for violations of state consumer protection laws that are materially-similar to the laws of California and New York, including:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following; |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |

74.     Each of these statutes is materially similar.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires individualized reliance, or proof of Defendant's knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. *See Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 666 (N.D. Cal. 2019) (finding that these states can be grouped into certifiable subclasses). Defendant's conduct violates each statute's prohibitions.

75.     The sale of the No MSG Products is the sale of goods to consumers. Hundreds of thousands (or potentially millions) of consumers purchase these products.

76.     As alleged in detail above, Defendant's misrepresentations were misleading to Plaintiffs and to reasonable consumers.

77.     For applicable statutes, Plaintiff Gatling-Lee provided written notice on February 8, 2022 and a demand for correction (together with notice of certain other violations alleged in this Complaint).  Plaintiff Nacarino provided written notice on March 25, 2022 and a demand for correction (together with notice of certain other violations alleged in this Complaint).  Upon the expiration of any governing statutory notice period, Plaintiffs and the class seek all available injunctive or monetary relief.

78.     Plaintiffs and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

First Amended Complaint                                                    Case No. 4:22-cv-00892-JST

1

2

**Count II: Violation of New York Gen. Bus. Law § 349**
**(on behalf of Plaintiff Gatling-Lee and the New York Subclass)**

3      79.     Plaintiffs incorporate each and every factual allegation set forth above.

4      80.     Plaintiff Gatling-Lee brings this cause of action individually and for the New

5  York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349

6  (among other relief).

7      81.     Plaintiff Gatling-Lee and the Subclass purchased No MSG Products in New York.

8      82.     Defendant's false and misleading "NO MSG" claims are consumer-oriented.

9      83.     Defendant's misrepresentations have a broad impact on consumers at large, i.e.,

10  the hundreds of thousands (or potentially millions) of New Yorkers that purchase these products.

11  These transactions recur every day.

12      84.     Defendant's "NO MSG" misrepresentations were material.  As alleged in detail

13  above, these misrepresentations were important to consumers and affected their choice to

14  purchase No MSG Products.  And, as alleged in detail above, these misrepresentations were

15  likely to mislead reasonable consumers.

16      85.     Defendant's misrepresentations were willful and knowing.  Because Defendant

17  makes and sells the No MSG Products, Defendant knows what ingredients they contain and

18  knows that those ingredients include free glutamates/MSG.  As a result, Defendant knows that

19  the No MSG Products contain glutamates/MSG.  Furthermore, Defendant controls its labeling,

20  knowingly put on the "NO MSG" representations, and knows the plain meaning of "NO MSG."

21      86.     Plaintiff Gatling-Lee and Subclass members were injured as a direct and

22  proximate result of Defendant's conduct, and this conduct was a substantial factor in causing

23  them harm, because they did not get what they paid for (e.g., cooking broths and stocks that do

24

22

not contain MSG) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

87.    Plaintiff Gatling-Lee and the Subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief. *See* N.Y. Gen. Bus. Law § 349 (h).

**Count III: Violation of New York Gen. Bus. Law § 350**
**(on behalf of Plaintiff Gatling-Lee and the New York Subclass)**

88.    Plaintiff incorporates each and every factual allegation set forth above.

89.    Plaintiff Gatling-Lee brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

90.    Plaintiff Gatling-Lee and the Subclass purchased No MSG Products in New York.

91.    Defendant's false and misleading "NO MSG" claims impacted consumers at large. Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase No MSG Products. These transactions recur every day.

92.    Defendant's "NO MSG" claims were deceptive and misleading in a material way. As alleged in detail above, these "NO MSG" misrepresentations were important to consumers and affected their choice to purchase No MSG Products. And these misrepresentations were likely to mislead reasonable consumers.

93.    Plaintiff Gatling-Lee and the Subclass saw and relied on Defendant's "NO MSG" misrepresentations.

94.    Defendant's misrepresentations were willful and knowing. Because Defendant makes and sells the No MSG Products, Defendant knows what ingredients they contain and

23

knows that those ingredients include free glutamates/MSG.  As a result, Defendant knows that the No MSG Products contain glutamates/MSG.  Furthermore, Defendant controls its labeling, knowingly put on the "NO MSG" representations, and knows the plain meaning of "NO MSG."

95.    Plaintiff Gatling-Lee and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (e.g., cooking broths and stocks that do not contain MSG) and they overpaid for the products because the products are sold at a price premium due to Defendant's misrepresentations.

96.    Plaintiff Gatling-Lee and the Subclass seek statutory damages of $500, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y. Gen. Bus. Law § 350-e (3).

### Count IV: Violation of California's Unfair Competition Law (UCL)
#### (on behalf of Plaintiff Nacarino and the California Subclass)

97.    Plaintiff incorporates each and every factual allegation set forth above.

98.    Plaintiff Nacarino brings this cause of action on behalf of herself and members of the California Subclass.

99.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

100.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged below and incorporated here.  In addition, Defendant engaged in unlawful conduct by violating California Health & Safety Code § 109875 et seq. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling.

***The Fraudulent Prong***

101.    As alleged in detail above, Defendant's "No MSG" representations were false and misleading.  Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiff Nacarino and other reasonable consumers.

***The Unfair Prong***

102.    Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

103.    Defendant's conduct caused substantial injury to Plaintiff Nacarino and class members.  The harm to Plaintiff Nacarino and the Class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the ingredients found in foods.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading food labels only injure healthy competition and harm consumers.

104.    Plaintiff Nacarino and the Subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceiving to reasonable consumers like Plaintiff Nacarino.

105.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers

106.    Defendant's conduct violated the public policy against false and misleading advertising, which is tethered to the CLRA, FAL, and Sherman Food Drug and Cosmetic Law.

*   *   *

107.    For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff Nacarino saw, read and reasonably relied on them when purchasing Defendant's

First Amended Complaint                                    Case No. 4:22-cv-00892-JST

products.  Defendant's misrepresentations were a substantial factor in Plaintiff Nacarino's purchase decision.

108.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

109.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff Nacarino and Subclass members.

110.    Plaintiff Nacarino and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the products if they had known that the products contain free glutamates/MSG, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

**Count V: Violation of California's False Advertising Law (FAL)**

**(on behalf of Plaintiff Nacarino and the California Subclass)**

111.    Plaintiff incorporates each and every factual allegation set forth above.

112.    Plaintiff Nacarino brings this cause of action on behalf of herself and members of the California Subclass.

113.    As alleged more fully above, Defendant has falsely advertised its products by falsely representing that the products have "No MSG."

114.    Defendant's representations were likely to deceive, and did deceive, Plaintiff Nacarino and other reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

115.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff Nacarino saw, read and reasonably relied on them when purchasing Defendant's products.

Defendant's misrepresentations were a substantial factor in Plaintiff Nacarino's purchase decision.

116.    In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the products.

117.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff Nacarino and Subclass members.

118.    Plaintiff Nacarino and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the products if they had known that the products contain free glutamates/MSG, and/or (b) they overpaid for the products because the products are sold at a price premium due to the misrepresentation.

## Count VI: Violation of California's Consumer Legal Remedies Act (CLRA)

### (on behalf of Plaintiff Nacarino and the California Subclass)

119.    Plaintiff incorporates each and every factual allegation set forth above.

120.    Plaintiff Nacarino brings this cause of action on behalf of herself and members of the California Subclass.

121.    Plaintiff Nacarino and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

122.    Plaintiff Nacarino, other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

123.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

First Amended Complaint                                    Case No. 4:22-cv-00892-JST

1   undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

2   goods to consumers.

3       124.    As alleged more fully above, Defendant has violated the CLRA by falsely

4   representing to Plaintiff Nacarino and the other members of the California Subclass that the

5   products have "No MSG."

6       125.    As a result of engaging in such conduct, Defendant has violated California Civil

7   Code § 1770(a)(5), (a)(7), and (a)(9).

8       126.    Defendant's representations were likely to deceive, and did deceive, Plaintiff

9   Nacarino and reasonable consumers.  Defendant knew, or should have known through the

10  exercise of reasonable care, that these statements were false and misleading.

11      127.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff

12  Nacarino saw, read and reasonably relied on them when purchasing the products.  Defendant's

13  misrepresentations were a substantial factor in Plaintiff Nacarino's purchase decision and the

14  purchase decisions of Subclass members.

15      128.    In addition, classwide reliance can be inferred because Defendant's

16  misrepresentations were material, i.e., a reasonable consumer would consider them important in

17  deciding whether to buy the products.

18      129.    Defendant's misrepresentations were a substantial factor and proximate cause in

19  causing damages and losses to Plaintiff Nacarino and Subclass members.

20      130.    Plaintiff Nacarino and Class members were injured as a direct and proximate

21  result of Defendant's conduct because (a) they would not have purchased the products if they

22  had known that the products contain free glutamates/MSG, and/or (b) they overpaid for the

23  products because the products are sold at a price premium due to the misrepresentation.

24

First Amended Complaint                                        Case No. 4:22-cv-00892-JST

131.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff Nacarino, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

132.    CLRA § 1782 NOTICE.  On March 25, 2022, a CLRA demand letter was sent to Defendant's California headquarters and California registered agent, via certified mail (return receipt requested).  This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff Nacarino and for each member of the California subclass within 30 days of this notice, Plaintiff Nacarino and the California subclass will seek all monetary relief allowed under the CLRA.

### Count VII: Breach of Express Warranty
**(on behalf of Plaintiffs and a Nationwide Class)**

133.    Plaintiffs incorporate by reference each and every factual allegation set forth above.

134.    Plaintiffs bring this count individually and for the Nationwide Class.

135.    Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the NO MSG Products, issued material, written warranties by representing that the products had "NO MSG."  This was an affirmation of fact about the products (i.e., a description of the ingredients) and a promise relating to the goods.

136.    This warranty was part of the basis of the bargain and Plaintiffs and members of the Nationwide Class relied on this warranty.

137.    In fact, the No MSG Products do not conform to the above-referenced representation because, as alleged in detail above, they contain free glutamates/MSG.  Thus, the warranty was breached.

29

138.     Plaintiff Gatling-Lee provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on February 8, 2022. Plaintiff Nacarino provided similar written notice on March 25, 2022.

139.     Plaintiffs and the Nationwide Class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased the No MSG Products at the price they paid if they had known that they contained free glutamates/MSG, and (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

## VII.    Jury Demand.

140.     Plaintiffs demand a jury trial on all issues so triable.

## VIII.    Prayer for Relief.

141.     Plaintiffs seek the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class;
- Damages, statutory damages (including under N. Y. Gen. Bus. Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

First Amended Complaint                                    Case No. 4:22-cv-00892-JST

Dated: March 28, 2022                    Respectfully submitted,


                                          By: */s/ Jonas Jacobson*

                                          Jonas B. Jacobson (Cal. Bar No. 269912) *
                                          jonas@dovel.com
                                          Simon Franzini (Cal. Bar No. 287631)
                                          simon@dovel.com
                                          Alex Van Dyke (Cal. Bar No. 340379)
                                          alex@dovel.com
                                          DOVEL & LUNER, LLP
                                          201 Santa Monica Blvd., Suite 600
                                          Santa Monica, California 90401
                                          Telephone: (310) 656-7066
                                          Facsimile: (310) 656-7069

                                          Zack Broslavsky (State Bar No. 241736)
                                          zbroslavsky@bwcounsel.com
                                          BROSLAVSKY & WEINMAN, LLP
                                          1500 Rosecrans. Ave, Suite 500
                                          Manhattan Beach, CA 90266
                                          Telephone: (310) 575-2550
                                          Facsimile: (310) 464-3550


                                          *Counsel for Plaintiffs and the Proposed Class*

First Amended Complaint                                    Case No. 4:22-cv-00892-JST